The Judges delivered their opinions.*
Judge Oaks»
I shall not protend to travel over again in this case, the dull and tedious round of cases on the subject of estates tail and executory devises. That task has been performed in Bells v. Gillespie; the authorities and reasoning in which apply directly to the caso at bar. I will barely remark, shat this case bears a more exact resemblance than that, to the case of Carter v. Tyler» First, the land was given to the semis in feo. Secondly, if either die without issue, the survivor was to have the whole. Thirdly, if both die *310 without issue, the land to be sold, and the money to be divided among his daughters then living, Sic. In these features, the two cases do not merely resemble each other, ^ui; are precisely the same. Sydnor v. Sydnor, 2 Munf. 263, also governs this case clearly, upon the principles ex= plained in Bells v. Gillespie.
I am of opinion that the decree be reversed, and the bill dismissed.
Judge Greek.
William Watkins, by his last will and testament, devised as follows: “ Item, I give to my beloved sons John and William Watkins, the land whereon I now live, containing three hundred and fifty acres, to be divided between them;” and after specifying the dividing line, the will-proceeds, “the above mentioned land I give to my above named sons, to them and their heirs for ever. But, in case either of my said sons should die without issue lawfully be» gotten, then it is my desire the survivor should have the whole. But, if both my said, sons should die without lawful issue, then it is my desire my said land be sold by my executors to the highest bidder, and the money arising therefrom be divided among my daughters then livings and if in case any of them should be dead and leave children, then in that case, it is my desire that the children of the deceased have an equal share with those living, so that each child or their children have an equal part.” The testator appointed his said two sons and John Turner his executors. The will was dated September 25, 1778, and admitted to probate at September Court, 1780. The sons entered upon their respective portions of the land. died without issue in 1797, and devised his part of the land to his brother William in fee. William after-wards died without issue, and devised the whole of the land (except about sixty acres sold by one of the brothers) to his wife Rebecm, ■ (who, with her second husband Broad *311 ñus, are tho appellants) for life, with several remainders over. Tho appellee is a surviving daughter of William Watkins the elder. Sho filed her bill in tho Chancery Court of Fredericksburg, against the purchaser of the sixty acres of land, and the devisees of William Watkins, the younger, and the children of her deceased sisters claiming under the will of William Watkins the elder, and pray» ing for a partition according to the rights of the parties. The Court held that the limitation over to the daughters and their children, was (in the events which had happened) good as an executory devise, and decreed accordingly.
It was admitted in the argument of this case, that in determining whether, upon the true construction of the will, an estate tail was vested in the sons, converted by our statute into an absolute estate in fee, the will is to receive the same construction as if the statute de donis had been in full force in Virginia, at the time of making the will, and tho death of the testator; and that what would have boon a remainder after an estate tail, if that statute were in force, cannot be construed into an executory devise, because the estate tail is converted into a fee simple by our statutes.' Indeed, no question can possibly now be raised on those points, since the decisions of this Court in Hilt v. Burrow, Tate v. Tally, Carter v. Tyler, and many others upon that point.
The limitation over to the executors, was a limitation of a fee simple estate, (Co. Litt. 9, b,) and would be defeated, if the sons took an estate tail; or, if the sons took a fee simple estate, was void as an executory devise, unless it was, by the terms of the will, necessarily to take effect, if at all, within the time allowed by law for the vesting of an executory devise. On the part of the appellee, it is contended that the sons took an estate in fee simple; that the limitation over to the executors was good as an executory devise; and that it was limited to take effect on the death of the sons, without issue then living, which was it? good time. To prove ibis,, the circumstances that the *312 limitation over was to the executors to sell and divide the money between the daughters then living, and the children of the daughters who were-dead, are relied on. The terms of the will certainly do not make it a condition, that there should be no issue of the sons living at their deaths, in order to give effect to the devise over. The sons might have died leaving issue surviving them, which might have failed in the life-time of one of the executors, or of one or more of the daughters; and in that event, it was clearly the intention of the testator, that the devise over should take effect. If it was the intention that the limitation should not take effect but upon the condition, that the issue of the sons should fail in the life-time of one of the executors or of one or more of the daughters, it might be good as an executory devise; being to take effect within a life or lives in being. But, I do not think that the will is susceptible of this construction. The testator did not intend to make the limitation over depend upon the failure of issue in the life-time of the executors, to whom it was to go in fee upon the failure of issue; for, there were but three executors, two of whom were the sons, who must have been dead before the event of the failure of their issue was determined; and the testator did not intend that the interest of his daughters should depend upon the event of the other executor’s dying before or after the sons, or the failure of their issue; Nor did he intend, as a condition upon which the devise was to take effect or not, that the failure of the issue of the sons should happen in the life-time of one of his daughters. He obviously mentioned one of the daughters then surviving, with the children of those that might- then be dead, for the purpose of prescribing a rule for the partition of the proceeds of the land; so that if any daughter should be then living, and others dead leaving children, the children of the deceased daughters should represent their parent, and have an equal share with the living daughters. The testator expressly declares, that this was the reason why he mentioned the living daughters and *313 the children of any deceased daughter; “ so that each child or their children have an equal part’5 The testator intended, that whenever the issue of his sons failed, the children of his daughters, if they were all dead, should succeed to the property, in the same proportions to which their mothers would have been entitled, if alive. It was, if the sons took a fee simple, a limitation of a fee upon a fee after an indefinite failure of the issue of the sons, and there» fore void.
But, the sons had only estates tail. The ultimate limitation to the daughters in feo, upon the indefinite failure of the issue of the sons, had the effect of converting the ex press estate in fee simple given to them, into an estate tail, for the purpose of effecting, the intent, of the testator, to provide for that issue in the first place, and afterwards for his daughters and their heirs, by giving them a remainder upon the estate tail to the sons.
If, however, the ultimate limitation was to take effect, if at all, within a life or lives in being, and was therefore good as an executory devise, and had not the effect of reducing the express estate in fee simple given to the sons, to an estate tail; yet the estate, given in terms to the sons, was reduced to a fee tail, by force of the express cross-remainders in fee limited to them. In that case, the ultimate limitation, instead of an executory devise, was a contingent remainder, under the rule in Purefoy v. Rogers, 2 Lev. 39, that no limitation shall be construed to be an executory devise which can take effect as a contingent remainder. After giving an estate in fee to each of the sons, the will proceeds, “But, in case either of my said sons should die without issue lawfully begotten-, then it is my desire the survivor should have the whole J* “ The whole,55 refers not only to the property, but to the estate given to the son who should die without issue. The will, then, has the same effect, as if the words “heirs55 or “issue55 followed the word “suryiyor;55 and to the purposes of this case. It *314 is not necessary to enquire, whether an estate tail or in tee was given to the survivor in the land devised to the sor* dying without issue. Nor is it necessary to determine upon the effect of the word “ survivor,” whether it gave to each son a vested remainder in the land devised to the other, the word survivor being understood as other, as has frequently been done, and which Í think is the true construction; or, whether each had a contingent remainder in the land devised to the other, to take effect only in case he actually survived the brother, whose estate was to go over upon the failure of his issue. For, upon either construction, whether these remainders were vested or contingent, they had the effect of reducing the estates given in the preceding clauses to both the sons, to estates in fee tail. If the ultimate limitation to the daughters were to take effect only ill ease both the sons had died in the life-time of one or more of the daughters, yet there was no limitation as to the time of the failure of issue of one of the sons, which should give to the other surviving him, (if a surviving was necessary to give the other a right,) a right to the whole, and to effectuate the general intent of the testator to provide for all the issue of both sons, as long as any issue existed, and the whole to the other and his heirs or issue, if the issue of one failed. The particular intent to give to each son an estate in fee, which would frustrate the other intentions of the testator, must yield to this general intent, and the fee simple be considered as reduced to an estate tail in each of the sons. The effect of this will was to give to each of the sons an estate tail with cross remainders between them, with remainder in fee to the daughters; and whether all these remainders were vested or contingent, is immaterial; since all of them were defeated fay the statute converting the estates tail in the sons, into estates in absolute fee simple.
The decree should be reversed, and the bill dismissed.
*315 .í'udgC C/V • ; Í.TEK-
The will in this case is dated in September, 1778, and it is contended, must be construed as if made before 1776. On this point I have given my opinion in the ease of Bells v. Gillespie. But, suppose this to be so; how stands this case?
It is contended, that the testator clearly intended that this land should remain entire with his sous, or one of them, and their posterity, as long as they existed, and that if ever it went over to those in remainder, it was to go an an entire estate, as one whole: that this being the case, (he interest of the sous must bo so arranged, as that a port, is not to pass over, unless the whole can do so also; and that to effect this, they must take estates tail in possession ire their respective shares, with cross-remainders in tail, remainder to the daughters. Nothing else can prevent the possibility of its going to them in parts.
I am not clear, oven admitting that if the estate went aver at ail, it was to go entire., that the conclusion follows die premises; though, if the other postulafum is also grant-ad, (to wit, that the entire lands were intended to remain with the sons, or one of them, and their posterity, so long .is any should remain.) if, might follow that ouch an estate tail, as is mentioned, was intended.
By the first clause, a fee simple is created, which, if cut down to a fee tail, must be in consequence of come general or primary intent, which must be defeated unless this is done. This, it, is said, is made, necessary by the clause, “but, if either of my said sons should die without lawful issue, then it, is my desire the survivor should have the whole;” because, this is aa indefinite failure of issue, and makes it an estate tail. But, if these words can be supposed to mean, that if either should die, “living the. other ” then as to this part, it would not go to the survivor, unless, at the time of the death, there was no issue. It would be the jaso of Hells v. Brown, and not he an estate tail. Why shall we say that this was not the intention ? The issua. if *316 any, of the brother so dying, is provided for by the fee to the father, who, it may well have been intended, should-have the fee and sole disposition of tho estate, in case he had issue at the time of his death. But, if he had no such issue, it was intended that then it should go to tho survivor $ not that when the issue of the one first dying should after-wards, and at any remote day, become extinct, it should. then go to the survivor, if he should be alive at that time, and if not, to his issue, if any.
But, if the other proposition is true, that .it was intended to go entire, it seems to me that the testator looked to, and had in his mind, the death of one leaving no issue, living the other, and who was then to take the whole; and that should he afterwards die, leaving no issue, that then the land should be sold by his executors, &e.; and although two of these were his sons, (who of course were both to be dead before such sale,) and whilst this shews some inconsistency or want of reflection, it nevertheless shews very clearly to my mind, that the testator was not thinking of events which might happen one hundred years after, but of what was to happen on the death of the surviving son. The natural meaning, and grammatical construction, too, of the words, is, a dying without issue at the time of the death; and therefore it is wonderful to me, that these substantial beacons and landmarks, (to say nothing of the consideration that estates tail cannot be created, and ought not therefore to be inferred, unless that is unavoidable,) should not be looked to, instead of supposing things that the testator evidently never thought of. What was his plain intention ? To give his lands to his sons in fee simple. But, then one or both might die without issue at his death. If he had issue, the testator had nothing more to say; he might give it as he pleased, or it might descend to them, or he might sell it, provided that when he died he left issue; he is satisfied that he will take care of his own issue. But, if he have no issue at his death, then he wished it to go to his surviving brother in fee, provided he left issue at his death. *317 Bui, he might also die without leaving issue, the whole having accumulated on him; and if so, then it is to be sold and divided among his daughters. If, however, it has not so accumulated; if his son who died first should leave issue, (and so the estate has, as to his part, become a fee in him,) aud then his other son dies Without issue at Ms death, the fee in him is determined, and must go to his testator’s right heirs. Possibly, they may be the issue of the son who died first, or his daughters. Thu testator did not, and could not, intend to provide for this ease, and was willing to let the Saw provide. But, if his sons successively die without issue at their deaths, he then knew precisely what was his wish, to wit, that the whole estate should enure to his daughters, and bo sold, &c.
The ease of Carter v. Tyler, was an entirely different one from this. There, the estates to the first takers were to them aud the heirs of their bodies; and if they die without heirs of their bodies, &e.; so that there was no implication about it. It was a direct and express fee tail. The only question was, whether the Act of 1776 destroyed the remainder limited on this estate tail, the events having happened, on which that remainder could take effect in possession, if not destroyed. ‘
Had this been a ease of express estates tail to the first takers, and even to terminate on the death of the first taker, if he had no issue then alive, it would, I presume, be equally within the Act, as it will be if the fee is cut down to an estate tail. But, in that case, there would be no implication about it, no estate in fee to cut down; and there would he no necessity for so often reminding us, (of which perhaps I am too forgetful,) that we must construe this will, just as we would in England. But, I think that in England, the Courts would not interfere with this fee simple estate for the purpose of defeating a plain intention in favor of daughters, on the happening of events clearly within the view of the testator, and which have actually happened within a life then in being. If the King’s Bench, with .Lord Restos at its head, would not do so, *318 (as It seems to me they would not,) I think I may be excused for not doing so here.
Fearne, after noticing the case of Pells v. Brown, says, e5But, here we are to attend to the distinction between the first limitation being in fee, and its being only in tail. In the first ease, the limitation over on a dying without issue, living dl., was good as an executory devise; for, the whole fez being first limited to a person in esse, there was no considering the subsequent limitation as a remainderff that is, as I understand, you must be satisfied that, an indefinite failure of issue was intended; that it was intended to provide for them as issue in tail, instead of children of an ancestor having a fee, before you can change the nature of that express fee that is created. But he says, if the first limitation had been in tail only, then the subsequent devise might have been considered as a contingent remainder depending on that estate tail, and as limited to take effect only in case that estate tail determined in the life of dig that is, in case the first devisee in tail died, without issue, in dl’s life time.
So, in Porter v. Bradley and Roe v. Jeffery, when the first estate is in fee, it is said, the question is whether, from the whole context of the will, we can collect, that when an estate is given to dl. and his heirs, but if he die without issue, then over, the testator meant “loithout issue living at the death” of the first taker. The rule was •settled in Pells v. Brown, and has never since been questioned.
If Lord Kenyon was hard to convince that it was right, even in England, to construe the same words as to realty, different from what they ought to be construed as to personalty, though one could be entailed, and the other not, I think he would have been harder to convince had he been sitting here, where neither can be entailed.
I am, therefore, for affirming the decree.
Judge Cabell concurred with the two first Judges, and the decree was reversed and the bill dismissed.

 TSta Psesibbsss absent